# Louisville & Nashville Railroad Co. v. Smith.

*Action by Employee against Railroad Company to recover Damages for Personal Injuries.*

1. *Action against railroad company by employee; when general affirmative charge for the defendant properly refused.*—In an action against a railroad company by a switchman, to recover damages for personal injuries sustained by the plaintiff being thrown from a car where his duties called him, by the sudden jerking or checking of the car, alleged to have been caused by the negligence of the foreman of the switching crew or the engineer, where there is evidence tending to show that the car upon which the plaintiff was standing just before the accident was suddenly and violently jerked or jarred, and that this resulted from the negligence complained of in the complaint, the general affirmative charge requested by the plaintiff is properly refused.

2. *Same; charge to the jury.*—In an action against a railroad company by a switchman to recover damages for personal injuries sustained by the plaintiff being thrown from a car, where his duties had called him, by a sudden jerk or check of said car, alleged to have been caused by the negligence of the foreman of the switching crew, or by the engineer in charge of the engine engaged in the switching, where the evidence shows that the control of the acts of the switchman

and of the movements of the train that was being switched was by means of signals given by the foreman of the switching crew in charge of the train to the engineer and switchman, and that it was the duty of the switchman to keep a lookout for all signals given by the foreman, a charge asserts a correct proposition and should be given at the request of the defendant, which instructs the jury, that if they believe the evidence "it was the duty of the plaintiff, in riding the car, to have kept a lookout for any and all signals that might have been given by the employee of the defendant."

3. *Same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury that if they "believe from the evidence that there was no more shaking and jarring in said car at the time of the injury to the plaintiff than was usual or customary on defendant's railroad, at and before that time, their verdict must be for the defendant"; such charge failing to predicate like conditions or similar circumstances, such as existed at the time of the alleged injury.

4. *Same; same.*—In such a case a charge asserts a correct proposition and should be given at the request of the defendant, which instructs the jury that "although the jury may believe from the evidence that said car was suddenly stopped, and that the speed of said car was suddenly checked, and that said car was otherwise jarred at the time plaintiff was injured, yet they must find for the defendant unless they further believe from the evidence that said sudden stopping of said car, or the sudden checking of said car, caused an unusual shaking or jarring of said car."

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHARLES A. SENN.

This action was brought by Joseph E. Smith against the appellant, the Louisville & Nashville Railroad Company, to recover damages for personal injuries received by the plaintiff while in the discharge of his duties as an employee of the defendant, and caused by reason of the alleged negligence of the defendant's servants. The complaint contains four counts. In the first count it was averred that the plaintiff was in the employment of the defendant as a switchman, and while so engaged in the discharge of his duties the personal injuries complained of were received; that he was thrown from the top of a freight car upon which he had gone to dis-

charge his duties as switchman; that while so upon the top of said car he was thrown or caused to fall from it, and suffered the injuries complained of by reason of the negligence of the defendant's engineer, one Crow, who "negligently caused or allowed said engine to suddenly stop said car or suddenly check the speed thereof or said car to be otherwise jarred by means of said engine." In the second count the negligence complained of was that the foreman of the switching crew, one John Kelly, "negligently caused or allowed said car to be suddenly stopped or the speed thereof suddenly checked or the speed of said car to be otherwise jarred as aforesaid while plaintiff was upon said car as aforesaid, and in a position where said sudden checking or stopping or jarring was dangerous to him." The negligence alleged in the third count was substantially the same as alleged in the second. In the fourth count the plaintiff averred the negligence as follows: "Plaintiff further avers that he suffered said injuries and damage as aforesaid by reason of the negligence of a person in the service or employment of defendant who had charge or control of a signal upon said railway, viz., one of the members of the crew of which plaintiff was a member and whose name is to plaintiff unknown, by means of said signal of which he had charge or control as aforesaid negligently caused the said engine to suddenly stop said car or check the speed thereof or otherwise jar same while plaintiff was in such position upon said car that the sudden stopping or checking the speed of said car as aforesaid was dangerous to him. All to plaintiff's damage twenty thousand dollars, wherefore he sues."

There were demurrers interposed to the first, second and fourth counts of the complaint, and motion made to strike the third count from the file. Each of these demurrers and motion was overruled, to which rulings the defendant separately excepted; but it is unnecessary on the present appeal to set out the grounds of the demurrers and motion.

The defendant pleaded the general issue and the following special pleas: "4. For further answer to said complaint the defendant says that the plaintiff was him-

self guilty of. negligence which contributed proximately to his alleged injury in the negligent manner in which he conducted himself in the performance of his work. 5. For further answer to said. complaint the defendant says that the plaintiff was himself guilty of negligence which contributed proximately to his alleged injury, in this: that he got upon or stood upon the car from which he fell in such a negligent manner that the jarring of the car, which was necessarily incident to the business and work for which he was employed, caused him to lose his balance. 6. For further answer to the complaint the defendant says that the plaintiff was himself guilty of negligence which contributed proximately to his alleged injuries, in this: that he negligently failed to secure himself upon the car from which he fell."

On the trial of the cause the evidence showed that at the time of the accident the plaintiff was in the employment of the defendant as a switchman; that the accident occurred in the yard of the defendant; that this yard was situated somewhere about Twenty-fourth street in Birmingham, and that the switching was done between Twenty-fourth street and Twentieth street; that there was a little down grade from Twenty-fourth street to Twentieth street; that the train contained eleven cars; that it was customary in switching the cars upon the different tracks in the yard for one of the switchmen, in response to a signal from the foreman, who was John Kelly, to go upon the top of the car, and, as it was cut loose from the train, to stop it by means of putting on the brake when it had reached the point to where it was intended to be carried; that it was in response to a signal of this kind from the foreman that plaintiff was upon the car from which he fell.

The evidence for the plaintiff tended to show that as the train of eleven cars, which were being switched, moved down from Twenty-fourth street towards Twentieth street, John Kelly, the foreman of the switching crew, signalled him, the plaintiff, to go upon the car nearest Twentieth street and take it

down to a certain point on the track; that in response to this signal he climbed up on the side of the car designated, by means of a ladder attached to the side, and that just as he got up on the top of the car and had straightened himself to go to the brake, which was at the other end of the car, the car was suddenly stopped and there was a violent jerk or checking of the car, which caused him to be thrown from the top of the car on the track, where he received the injuries complained of.

It was shown by the evidence that it was customary for the foreman, after he had signalled the switchman to take the car being switched upon a certain track, to go in between the other cars and the car that the switchman was on and cut it loose from the remainder of the train; and the plaintiff's evidence tended to show that after giving said signal for him to go upon the car, John Kelly proceeded to go between the cars for the purpose of cutting said car loose from the other part of the train.

The plaintiff, as a witness in his own behalf, testified that he had had a great deal of experience as a brakesman and as a switchman; that the car, at the time of the accident, was jerked with such violence that it caused him to lose his balance; that while it was an unusual jerk, he had seen cars jerked or jarred equally as much, but that the jerk which caused him to fall was hard, violent and sudden.

The evidence for the defendant tended to show that the car was not stopped just prior to the accident, and that there was no jerk or jar which was not ordinarily incident to the handling and switching of freight cars.

The testimony of the engineer who was handling the engine in switching said cars was that just prior to the accident he received a signal from the foreman to "slack ahead," and that just about the time the slack reached the rear car he received the signal to stop; that he thereupon applied the air ,and upon being informed that a man was under the train, reversed the engine and stopped it within a few inches.

The evidence as to the extent of the injuries received by the plaintiff was in conflict; that of the plaintiff tend-

ing to show that the injuries received were serious, while that of the defendant tended to show that they were slight and not permanent.

Upon the introduction of all the evidence the court, at the request of the plaintiff, gave to the jury the following written charges: (1.) "The court has charged the jury that unless the jury believe from the evidence in this case that the car upon which plaintiff was riding was by defendant's employees or employe stopped, or the speed thereof was suddenly checked, or said car was otherwise unusually jarred, then their verdict must be for the defendant. The court does not mean to charge the jury by this that if the stopping or checking of the train, if any, was with no greater force than was usual under other circumstances than those in the case under consideration, plaintiff could not recover, but it is true that if such stopping or checking, if any is shown by the evidence, was greater than is usual under the same circumstances, then plaintiff could not recover." (2.) "The burden of proving contributory negligence is on the defendant, and unless the jury are reasonably satisfied from the evidence that plaintiff was guilty of negligence himself which proximately helped to bring about his own injuries, defendant fails on his pleas of contributory negligence." (3.) "Plaintiff is not shown in this case to have been guilty of contributory negligence unless the evidence reasonably satisfies the jury that plaintiff did something which a reasonably prudent man would not have done under the same circumstances, or failed to do something which a reasonably prudent man would have done under the same circumstances."

The defendant separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "If the jury believe the evidence in this case, they must find a verdict for the defendant." (2.) "If the jury believe the jury in this case, they must find a verdict for the defendant under the third count of the complaint." (3.) "I charge, you, gentlemen of the jury, if you believe the evidence, that it was the duty of the plaintiff, in riding the car, to have

kept a lookout for any and all signals that might have been given by the employee of the defendant." (4.) "If the jury believe from the evidence that there was no more shaking and jarring in said car at the time of the injury to the plaintiff than was usual or customary on defendant's railroad at and before that time, their verdict must be for the defendant." (5.) "Although the jury may believe from the evidence that said car was suddenly stopped, and that the speed of said car was suddenly checked, and that said car was otherwise jarred at the time plaintiff was injured, yet they must find for the defendant unless they further believe from the evidence that said sudden stopping of said car, or the sudden checking of said car, caused an unusual shaking or jarring of said car."

There were verdict and judgment for the plaintiff, assessing his damages at $3,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHAS. P. JONES and ALEX C. BIRCH, for appellant.—It does not follow as matter of law, nor is a jury authorized to infer as a matter of fact, that because a stop is sudden, or that it has not been the custom to stop so suddenly, or to jerk the cars so hard, that such action is negligence. The burden is on the appellee to show negligence. Before negligence can follow from such acts, it must be shown further, that the stop was unnecessary. Unless this is shown, negligence of defendant is not shown.—*Birmingham R. R. Co. v. Wilmer*, 99 Ala. 176; *H. A. & B. R. R. Co. v. Miller*, 120 Ala. 535.

BOWMAN & HARSH, *contra.*

DOWDELL, J.—The assignments of error in the record to the rulings of the court upon demurrer and motion are not insisted upon in argument by appellant; indeed, the insistence by appellant is confined to those assignments of error based upon the refusal of the court to give the several written charges, pointed out, requested by the defendant in the court below, and our

consideration of the case will, therefore, be confined to those assignments.

As to the general affirmative charge requested by the defendant, as well as the affirmative charge as to the third count of the complaint, we are not prepared to say, upon a consideration of the entire evidence introduced upon the trial, that it does not admit of different conclusions under the issues made by the pleading. The general charge should never be given where there is any conflict in the evidence as to any material fact in issue upon which a recovery may be had, or where the evidence fairly admits of a conclusion or inference which may be drawn by the jury adverse to the right of recovery by the party requesting such charge.

Charge No. 3, requested by the defendant and refused by the court, though somewhat broad in statement, nevertheless, in our opinion, contained a correct proposition of law, and which, when referred to the evidence in this case, was neither abstract nor misleading. The complaint charges negligence in the control and superintendence exercised over the car from which the plaintiff is alleged to have been thrown or caused to fall, and in his evidence plaintiff shows that this control or superintendence was exercised by means of signals, given by the foreman in charge of the train crew to the engineer and switchmen; that it was the foreman's duty to give such signals, and the duty of other members of the crew, including plaintiff, to direct the movement of the engine and cars in obedience to such signals. The evidence further shows, without conflict, that it was the duty of the switchman to keep on the lookout for all the signals given by the foreman. The appellee thus recognized and established, by his pleadings and evidence, the office and import of such signals, and bases charges of negligence upon the manner in which the duty of signalling was performed. It needs no argument to show the justice of the proposition that if it be the duty of one employe to control the action of engine and cars and the actions of other employes in charge thereof, by means of signals, it is also the duty of such other employes, not only to obey such signals

as they may be given, but also to keep on a lookout for all signals that may be given by such employe whose duty it is to make them. The duty to give signals implies a corresponding duty to see and obey the same, and the performance of said latter duty with due and ordinary care necessarily implies the further duty of being on the watch for all such signals. A failure in such latter duty would tend to show contributory negligence upon the part of the plaintiff, such as was charged under the fourth plea in answer to the complaint. We do not mean to say that a failure to see any signal that might be given would necessarily imply negligence—such, for instance, as signals made where it is impossible for one to see them, or made at such a time as when, in the proper performance of the duties of his position, the attention of an employe is necessarily directed elsewhere; but such reasons as these do not conflict with the general duty to keep a proper lookout for all signals that may be given by one whose duty it is to give them on the part of another whose duty it is to receive them. Under the evidence charge No. 3 was proper and should have been given, leaving it to the jury to say whether or not the plaintiff had been guilty of contributory negligence in failing to observe or be governed by the signals of foreman Kelly for the stopping of the train, which the engineer and fireman testify was given by said Kelly.

Charge 4 requested by the defendant was bad in its failure to predicate like conditions, or similar circumstances, such as existed at the time of the alleged injury. It is a matter of common knowledge that jerking and jarring, with more or less violence, necessarily attend the handling of locomotives and cars under the circumstances and conditions shown in the evidence in this case, and it cannot be, as a matter of law, questioned that the plaintiff assumed the risks incident to the usual and customary performance of his duty as switchman under his said complaint. The jerking or jarring of the car on which the plaintiff was at the time riding in the performance of his duty is alleged in the complaint as the immediate and direct cause of the in-

36

jury complained of, and that this jerking and jarring resulted from the sudden stopping or checking of said car. There is no pretense that the defendant was guilty of any wanton or willful misconduct causing plaintiff's injury. The right of action is based solely upon simple negligence. Charge 5, requested by the defendant, asserts that, "although the jury may believe from the evidence that said car was suddenly stopped, and that the speed of said car was suddenly checked, and that said car was otherwise jarred at the time plaintiff was injured, yet they must find for the defendant unless they further believe from the evidence that said sudden stopping of said car, or the sudden jerking of said car, cause an unusual shaking or jarring of said car." If the jerking and jarring was such as was customary and usual, and not an unusual jerking or jarring, then the incident risk was one that was assumed by the plaintiff in his said employment. We are of the opinion that the charge was proper, and should have been given as requested.—*Birmingham Mineral R. Co. v. Wilmer*, 97 Ala. 168; *Highland Ave. & Belt R. Co. v. Miller*, 120 Ala. 543.

For the error in refusing charges three and five, requested by the defendant, the judgment of the court below must be reversed and the cause remanded.

Reversed and remanded.